# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

DARRY HARRINGTON,

        Plaintiff,

vs.                                  Case No. 3:08-cv-426-J-MCR

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,

        Defendant.

_____/

## MEMORANDUM OPINION AND ORDER[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying his application for Social Security benefits. The Court has reviewed the record, the briefs and the applicable law. For the reasons set forth herein, the Commissioner's decision is **AFFIRMED**. .

## I.    PROCEDURAL HISTORY

Plaintiff protectively filed an application for Social Security Income ("SSI") on February 3, 2004. (Tr. 17, 30, 32, 73). Plaintiff's application was denied initially and upon reconsideration. (Tr. 17, 30, 32, 53-55). Following an administrative hearing on November 17, 2006, the ALJ issued a decision dated February 23, 2007, finding Plaintiff was not disabled. (Tr. 467-507, 17-25). Plaintiff's Request for Review to the Appeals Council was denied on January 23, 2008, and again on March 13, 2008. (Tr. 4, 8). Plaintiff timely filed a Complaint in this Court and the case is now ripe for judicial review.

---

[1] The Parties consented to a United States Magistrate Judge exercising jurisdiction. (Doc. 11).

## II.    NATURE OF DISABILITY CLAIM

### A.    Basis of Claimed Disability

Plaintiff claims to be disabled since August 12, 1999, due to herniated disc, ruptured vertebrae, high blood pressure, and anxiety.  (Tr. 66-67).

### B.    Summary of Evidence Before the ALJ

At the time of the administrative hearing, Plaintiff was 53 years old and had an eleventh grade education.  (Tr. 470).  Plaintiff indicated he passed his GED but did not receive the certificate.  Id.  Plaintiff's past work experience included work as a lawn maintenance technician, lawn cutter, kitchen helper, and a short order cook.  (Tr. 501).

#### 1.    Medical Evidence

On August 5, 1999, Plaintiff was involved in a motor vehicle accident.  (Tr. 154). Plaintiff saw Dr. Edith Ortega on March 27, 2000.  Id.  Plaintiff reported he was depressed and had gained 30 lbs. since the accident.  Id.  Dr. Ortega advised Plaintiff to go to a pain clinic and prescribed pain medication.  (Tr. 151).  On June 9, 2000, Plaintiff had a cervical myelogram under the care of Dr. Manley Kilgore.  (Tr. 142).  The myelogram produced findings consistent with a central-to-right-sided disc protrusion at L4-5 and a probable central disc protrusion at L2-3.  Id.  Plaintiff also had a small disc protrusion and/or osteophyte formation at C5-6 and C6-7.  Id.  On November 8, 2000, Plaintiff underwent an Anterior Cervical Discectomy and Fusion ("ACDF"), C5-6, C6-7, with instrumentation.  (Tr. 167).  Plaintiff was given pain medication and instructed to wear an Aspen collar when up and about.  Id.  Plaintiff was told to wear a soft collar when sleeping.  Id.  Plaintiff was seen for follow-up visits on December

7, 2000 and March 12, 2001.  (Tr. 161, 164).  Each time the doctor reported satisfactory postoperative appearance.  Id.

On March 31, 2002, Plaintiff was admitted to Ten Broeck Hospital ("Ten Broeck") under the Baker Act.  (Tr. 184).  Plaintiff was transported to Ten Broeck after making suicidal threats in the emergency room at Orange Park Medical Center.  Id.  A psychiatric evaluation was performed by Carlos Torrellas, M.D.  Id.  Dr. Torrellas noted Plaintiff's history of abusing benzodiazepine and pain pills.  Id.  Dr. Torellas observed Plaintiff's speech was very tangential, pressured, and disorganized.  Id.  Plaintiff admitted making threats to overdose.  Id.  Plaintiff said it was crazy for him to be at Ten Broeck.  Id.  Plaintiff stated his issues were physical, not mental.  Id.  Dr. Torrellas ruled out bipolar disorder, and diagnosed abuse of benzodiazepine and opioid and partner relational problems.  (Tr. 185).  Plaintiff's GAF upon admission was 40.  (Tr. 322).  Plaintiff's GAF was estimated to be as high as 60 in the preceding year.  (Tr. 185).

On April 1, 2002, Dr. Thomas Thommi completed a consultative report indicating Plaintiff had a history of diarrhea, when anxious, and gastritis.  (Tr. 189).  Dr. Thommi noted the anxiety Plaintiff was experiencing raised a question of early drug withdrawal.  Id.  The Ten Broeck treatment records indicate on April 2, 2002, Plaintiff denied dependence on chemicals, but he demonstrated symptoms of withdrawal.  (Tr. 402).  Plaintiff's speech continued to be tangential and pressured with loose associations.  Id.  On April 4, 2002, Plaintiff participated in group therapy.  (Tr. 371).  The facilitator noted Plaintiff was bizarre in his responses at times and superficial.  Id.  In the group therapy session, Plaintiff stated he slept okay and was not depressed.  Id.  Plaintiff said he was restless, very anxious, and ready to go home.  Id.  Plaintiff denied suicidal ideations.  Id.

On July 27, 2002, Plaintiff presented to the emergency room due to a seizure. (Tr. 191). Plaintiff was seen by Dr. Thomas Hardin. Id. In 2004, Dr. R. D. House noted Plaintiff experienced seizure disorder in 2002 when he stopped taking his medication. (Tr. 201). There is no further evidence of seizure disorder.

On April 28, 2004, Dr. House completed a consultative examination of Plaintiff. (Tr. 201). Dr. House reported disc disease due to a degenerative plate in Plaintiff's neck, mild degenerative arthritis to Plaintiff's left knee, depression, anxiety, poor stress energy, crying, poor sleep, hypertension, severe fibromyalgia, and GERD Esophageal Reflux. (Tr. 202). On May 5, 2004, Louis Legum, Ph.D. performed a consultative psychological evaluation of Plaintiff. (Tr. 205). Dr. Legum reported Plaintiff had tangential and vague responses and lacked detail in recounting his accident. (Tr. 207). Dr. Legum noted Plaintiff's ongoing impairment was relative to his ingestion and smoking of marijuana. Id. Dr. Legum diagnosed substance induced mood disorder, marijuana dependence, and personality disorder with narcissistic traits. (Tr. 208). Dr. Legum noted Plaintiff's cervical area pain, and gastrointestinal difficulties, and he reported a GAF of 50-55. Id.

On June 17, 2004, Alejandro F. Vergara M.D. completed a Psychiatric Review Technique Form. Dr. Vergara noted Plaintiff had substance induced mood disorder, marijuana dependence, and personality disorder with narcissistic traits. (Tr. 212, 216, 217). Dr. Vergara found Plaintiff had mild functional limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace, with no episodes of decompensation. (Tr. 219). Dr. Vergara opined Plaintiff's mental condition was not severe and any disability Plaintiff might have was physical in nature. (Tr. 221).

Hugh E. Switzer, M.D. of Riverside Orthopedics examined Plaintiff on June 30, 2004. (Tr. 224). Dr. Switzer stated Plaintiff did not appear depressed. (Tr. 225). Dr. Switzer noted continued neck pain, possible bilateral tardy ulnar nerve palsies at the elbow, low back pain secondary to degenerative disc disease, mild to moderate bilateral chondromalacia patella, a history of hypertension, and a history of GERD. (Tr. 227).

Dr. Herman Sessions treated Plaintiff from August 27, 2002 through September 30, 2004. (Tr. 2). Dr. Sessions completed an evaluation form on April 8, 2004, in which he opined Plaintiff's quality of thinking was normal. (Tr. 256). Dr. Sessions noted Plaintiff had controlled chronic anxiety. Id. Dr. Sessions indicated Plaintiff's diagnoses were low back pain, anxiety disorder, and possible personality disorder, but he opined Plaintiff was mentally capable of functioning. (Tr. 257). Dr. Sessions opined Plaintiff would not be able to function in a stressful environment and he did not take orders well from superiors. Id. Dr. Sessions believed Plaintiff would be able to sustain work activity for eight hours a day five days a week, depending on the stress level of the work setting. (Tr. 257).

Plaintiff saw Dr. James R. Biggerstaff from December 24, 2004 through November 15, 2006. (Tr. 434). Throughout Dr. Biggerstaff's treatment records, he diagnosed Plaintiff with anxiety. (Tr. 435, 438, 441, 444, 460, 463). However, each time Dr. Biggerstaff also reported Plaintiff's mental state appeared normal. Id. On March 17, 2005, Dr. Biggerstaff refilled Plaintiff's Xanax prescription. (Tr. 452, 446). On March 30, 2005, Plaintiff reported to Dr. Biggerstaff that he was feeling better physically and mentally and was working out with weights. (Tr. 449). At the March 30, 2005 visit, Dr. Biggerstaff refilled Plaintiff's hydrocodone prescription, which he noted was for Plaintiff's

chronic low back pain. Id. On February 17, 2006, Dr. Biggerstaff noted Plaintiff's reports of caring for his father. (Tr. 438).

Clinical Psychologist, Peter Knox, M.Ed., Psy.D., DABPS, performed a mental evaluation of Plaintiff on March 31, 2005. (Tr. 268). Plaintiff reported to Dr. Knox that the last time he used marijuana was the previous Monday. (Tr. 271). Plaintiff stated he did not do drugs because marijuana is not a chemical. Id. Plaintiff claimed marijuana is organic. Id. Dr. Knox diagnosed marijuana dependence, mild adjustment disorder, and histrionic and narcissistic personality, with a GAF of 60. (Tr. 272). In terms of work related mental activities, Dr. Knox opined Plaintiff had no significant impairment, his memory and understanding appeared to be intact, and he had no significant issues in the area of persistence and concentration. (Tr. 273).

William V. Choisser M.D., J.D., performed a disability evaluation on April 5, 2005. (Tr. 276). Dr. Choisser found Plaintiff had no major pain, swelling, heat, or redness in any joints of his extremities. (Tr. 277). Plaintiff was able to walk without an assistive device and the ROM of Plaintiff's lumbar spine was within normal limits. Id. No paravertebral muscle spasm was noted. Id. Neurologically, Dr. Choisser noted Plaintiff was most impressive for severe anxiety during the interview. Id. On April 14, 2005, a Psychological Review Technique Form was completed by Dr. Wise. (Tr. 291). Dr. Wise indicated mild functional limitations due to mild adjustment disorder.

Finally, Phillip R. Yates, Ph.D., P.A. performed a Mental Status Examination and Personality Assessment Inventory on May 16, 2005. (Tr. 303). Plaintiff was referred to Dr. Yates by his legal representative. Id. Dr. Yates found Plaintiff had poorly connected speech, loose thought processes, significant depression, and narcissism, with no suicidal

ideations. (Tr. 305-308). Dr. Yates diagnosed Cyclothymic Disorder and Obsessive Compulsive Disorder. (Tr. 308-309). In terms of Plaintiff's ability to do mental work related activities, Dr. Yates opined Plaintiff had little to no ability to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with work stresses, and maintain attention/concentration. (Tr. 911). Dr. Yates opined Plaintiff had a fair ability to function independently, had a good ability to understand, remember, and carry out simple job instructions, and had a fair ability to maintain personal appearance. (Tr. 312).

### 2. Other Evidence

An administrative hearing was held on November 17, 2006. (Tr. 467-507). At the time of the hearing, Plaintiff was working three days per week mowing, edging, weeding, and blowing grass. (Tr. 471-472). Plaintiff also indicated that from March to July of 2004, he worked 30 to 35 hours per week as a prep cook. (Tr. 471). Plaintiff testified that as a result of the accident and the subsequent surgery, he experienced numbness in his hands that came and went and migraine headaches, for which he was prescribed hydrocodone. (Tr. 474). Plaintiff indicated he was unable to bend to tie his shoes. (Tr. 477). Plaintiff stated he could not sit for too long without his legs going to sleep, and he had to move around to keep his blood circulating and to stretch his hamstrings. Id. Plaintiff reported he could push but he could not pull anything because of his 40 pound weight limit. Id. Plaintiff stated that to relieve his pain, in addition to medication, he used ice packs, hot and cold water, heating pads, and a brace every day on his lower back. (Tr. 477-478). Plaintiff testified that when lying on his left side, he used a pillow between his legs and two pillows underneath his neck to keep his spine even. (Tr. 476). Plaintiff

testified the side effects from his medication were diarrhea and bad memory.  (Tr. 478).

Plaintiff stated he tried to keep a good frame of mind and he recognized he could not do

what he used to because of his age.  (Tr. 479).  Plaintiff testified he "psyched himself up"

to do what he had to do.  (Tr. 480).  Plaintiff also stated he took his medication with food

so it would not aggravate his stomach.  Id.  Plaintiff indicated he would also take his

medication at certain times so it would not affect him if he had to go out.  Id.

Plaintiff testified he cooked for his wife and did everything he could to help her.

(Tr. 485).   Plaintiff stated he normally did the grocery shopping, but his wife would do

the grocery shopping with him sometimes.  Id.  Plaintiff stated he did not like to dust, but

he vacuumed and did laundry with no problem.  (Tr. 486).  Plaintiff testified he had no

difficulties with personal care, except sometimes he would put the towel over his back

and rub against the wall to dry his back.  (Tr. 487).  Plaintiff indicated he took naps

sometimes during the day, but only if he could not help it.  Id.  Plaintiff testified he had

good days and bad days, but he made sure to take his medication and he just tried to

make the best of it.  (Tr. 488).

With respect to Plaintiff's claimed disability due to anxiety, Plaintiff testified he

could not have people pushing or pressuring him because it caused him to

hyperventilate.  (Tr. 480).  Plaintiff stated he did not like crowds, but could manage to be

around a few people.  (Tr. 482).  Plaintiff said he had a panic attack from seeing himself

in the neck brace after his surgery.  Id.  Plaintiff also reported he had three seizures after

that attack.  Id.  When the ALJ asked Plaintiff how he responded to criticism, Plaintiff

stated "[he] did not get criticized because [he] did not do anything to get criticized for."

(Tr. 481).  Plaintiff stated he got tired, but he had no problems with irritability because he

tried to have a sense of humor and he read to take his mind off things. (Tr. 484). Plaintiff stated his concentration was okay, but his memory was terrible. Id.

Plaintiff testified his admission to Ten Broeck was a mistake. (Tr. 491-492). Plaintiff stated he told the people at Ten Broeck there was nothing wrong with him mentally, it was his health. (Tr. 492). Plaintiff testified he was not at Ten Broeck because of dependence on Xanax. (Tr. 492-493). Plaintiff indicated he first used marijuana for acute gastritis. (Tr. 494). He stated the marijuana stopped him from throwing up. Id. Plaintiff indicated he was never involved with drugs to the point that he would have withdrawals or seizures. (Tr. 481). Plaintiff testified he last used marijuana in 2004. (Tr. 493). Plaintiff testified he served 86 days in prison for possession of more than 20 grams of marijuana. (Tr. 498). However, Plaintiff denied being incarcerated three times due to involvement with marijuana. Id. The ALJ asked Plaintiff about a psychologist's report dated May 5, 2004, which indicated Plaintiff had been eating and smoking marijuana since age 15. (Tr. 494). Plaintiff testified the psychologist took what he said about his use of marijuana out of context. (Tr. 494-495). Plaintiff stated he had not been smoking marijuana all his life. (Tr. 495).

The ALJ asked Vocational Expert, Joanna K. Vanderkolk, whether a hypothetical individual aged 53 years old with the same work background and education as Plaintiff would be able to perform any of his past work if he could sit up to eight hours per day, stand and walk up to six hours per day, lift up to 20 pounds occasionally, lift 10 pounds frequently, bend occasionally, climb stairs, crouch, kneel, and reach above shoulder level occasionally. (Tr. 501-502). Ms. Vanderkolk was also asked to consider the fact that the hypothetical individual was unable to crawl, work around unprotected heights, or

work around moving/hazardous machinery.  Id.  Ms. Vanderkolk testified the hypothetical individual could not perform past relevant work, but could perform light unskilled jobs such as office helper, ticket seller/taker, parking lot attendant, and sorter.  (Tr. 503).  Ms. Vanderkolk indicated the noted jobs would not be eliminated completely if such an individual was also limited to low stress jobs and had an inability to be around people due to anxiety, but the number of jobs available would be reduced.  (Tr. 505).

   **C.**     **Summary of the ALJ's Decision**

   A plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months.  42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. § 404.1505.  The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, he is not disabled.  29 C.F.R. § 404.1520(b), 416.920(a)(4)(i).  Second, if a claimant does not have any impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c),  416.920(a)(4)(ii).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.  20 C.F.R. § 404.1520(d), 416.920(a)(4)(iii).  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.  20 C.F.R. § 404.1520(e), 416.920(a)(4)(iv).  Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.  20 C.F.R.

§ 404.1520(f), 416.920(a)(4)(v).  Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In this case, at step one, the ALJ determined while Plaintiff was working three days per week at the time of the hearing and had worked 30 to 35 hours per week in 2004, more evidence was needed to evaluate whether Plaintiff had engaged in substantial gainful activity since the alleged date of onset.  (Tr. 19).  However, so as not to delay the issuance of a decision, the ALJ decided to proceed to the other steps of the disability evaluation and if necessary, deny the claim at step five of the process.  <u>Id.</u>  At step two, the ALJ determined Plaintiff had the following severe impairments: lumbar degenerative disc disease, cervical degenerative disc disease, status post ACDF, and fibromyalgia.  <u>Id.</u>  The ALJ determined Plaintiff's hypertension, GERD, and mental impairments were "not severe".  (Tr. 20-21).  Third, the ALJ determined Plaintiff did not have any impairment or combination of impairments that met or medically equaled a listed impairment.  Fourth, the ALJ found Plaintiff had the residual functional capacity to perform light work, but could not perform his past relevant work.  (Tr. 22, 24).  Considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found Plaintiff could adjust to work which was available in significant numbers in the national economy.  (Tr. 24).  Relying on the testimony of a Vocational Expert ("VE"), the ALJ found Plaintiff could perform work as an office helper, ticket seller or taker, a parking lot attendant, and a sorter.  (Tr. 25).  Accordingly, the ALJ found Plaintiff was not under a "disability" since February 3, 2004, the date the application for benefits was filed. <u>Id.</u>

III.    ANALYSIS

A.      **The Standard of Review**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine reasonableness of factual findings).

B.      **Issues on Appeal**

Plaintiff argues the following issues on appeal: (1) the ALJ erred by failing to find Plaintiff's depression, bipolar disorder, and anxiety were "severe" impairments, (2) the ALJ erred as a matter of law in evaluating Plaintiff's pain, (3) the ALJ erred in the hypothetical questions he posed to the VE, and (4) the ALJ failed to accord proper weight to the opinions of Plaintiff's treating and examining sources. The Court will address each of the issues raised by Plaintiff.

### 1.    Evaluation of Plaintiff's mental impairments

Plaintiff argues the ALJ ignored the severity of Plaintiff's mental impairments as reflected in the 2002 treatment records from Ten Broeck, as well as the reports of all of Plaintiff's mental health sources. (Tr. 17, p. 8). Specifically, Plaintiff contends despite the evidence of Xanax abuse, the ALJ did not make any finding that Plaintiff's mental disorder was related to any addiction. Id. The Commissioner argues substantial evidence supports the ALJ's finding that Plaintiff does not have a severe mental impairment. (Doc. 18, p. 5). The Commissioner contends Plaintiff failed to show his mental condition interfered with his ability to work or meet the mental demands of unskilled light work. (Doc. 18, pp. 5, 9). Further, the Commissioner argues the mere diagnosis of mood disorder and anxiety is not enough to find Plaintiff's mental impairments severe and the findings of Plaintiff's treating and examining physicians undermine Plaintiff's allegations of a severe mental impairments. (Doc. 18, pp. 5, 7-8).

When evaluating mental impairments, the Social Security Regulations require that the ALJ use the "special technique" dictated by the Psychiatric Review Technique Form ("PRTF"). Moore v. Barnhart, 405 F.3d 1208, 1213 (11th Cir. 2005) (citing C.F.R. § 404.1520a-(c)(3-4) and 404.1520a-(e)(2). The Psychiatric Review Technique requires

separate evaluations of how the claimant's mental impairments impact four functional areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, or pace; and 4) episodes of decompensation.  Id.  It is the duty of the ALJ to incorporate the results of this "special technique" into his findings and conclusions.  Id.  The severity requirement for mental impairments cannot be satisfied when the evidence shows the claimant has the ability to perform basic work activities.[2]  See SSR 85-28, 1985 WL 56856 (Nov. 30, 1984).  see also Freeman v. Barnhart, 220 Fed. Appx. 957, 961 (11th Cir. 2007) (holding substantial evidence showed claimant's mental illness did not significantly limit her ability to work where she received treatment for depression and even though she remained symptomatic, she was alert, active, stable, and improved). "[I]t is not diagnosis but, rather, the functional limitations caused by a condition . . . that determine disability."  Lafferty v. Astrue, 5:07-cv-347-Oc-GRJ, 2008 WL 4456467, at *7 (M.D. Fla. Sept. 30, 2008) (quoting Johns v. Bowen, 821 F.2d 551, 555 (11th Cir. 1987)). Therefore, the mere fact that a mental condition has been diagnosed is not enough to find a claimant has a severe mental impairment.  Id.  Where the diagnosed mental condition does not limit the claimant's ability to do basic work activities, the mental condition will be deemed "not severe."  See Id.

In this case, the ALJ provided a detailed review of the records reflecting Plaintiff's mental health issues.  (Tr. 20 - 22).  However, the ALJ found despite Plaintiff's psychiatric admission, the records showed Plaintiff's condition had significantly improved

---

[2]Basic work activities include: "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in routine work setting."  SSR 85-28.

by the time he was discharged. (Tr. 20). The ALJ further noted subsequent to Plaintiff's hospitalization, Plaintiff had no significant mental health treatment. Id. The ALJ discussed the fact that despite Plaintiff's testimony about experiencing depression and anxiety in crowds, Plaintiff worked in a position that required interaction with the public and the environment. Id. The ALJ found Plaintiff was able to help himself, understand, remember, and execute simple instructions, and any difficulties Plaintiff experienced with memory and concentration were not severe enough to interfere with Plaintiff's daily functioning. (Tr. 21). The ALJ found none of the doctors who saw Plaintiff for his mental conditions reported resulting difficulties in functioning except Dr. Yates, whose opinion the ALJ gave little weight. (Tr. 20-21). The ALJ found after considering the evidence, Plaintiff's mental impairments only resulted in mild limitation in each of the four-functional areas described in the PRTF. (Tr. 21).

Plaintiff argues the ALJ ignored treatment records from Ten Broeck and did not make any finding concerning Plaintiff's drug dependence. (Doc. 17, p. 8). The ALJ is not required to refer to every bit of evidence in his decision. Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (stating there is no rigid requirement that the ALJ reference every piece of evidence so long as the ALJ's decision is not a broad rejection). Nevertheless, contrary to Plaintiff's allegation, the ALJ stated Plaintiff's memory and concentration problems were likely the result of his drug use, but he found they were not severe enough to affect Plaintiff's daily performance. (Tr. 21). The Court finds the ALJ considered the evidence of Plaintiff's mental impairments in its entirety and provided support for his finding that Plaintiff's mental impairments were not severe. While Plaintiff's anxiety was noted throughout the record, there is little evidence that it affected

15

his ability to function on a day to day basis.

Dr. Sessions noted Plaintiff had *controlled* chronic anxiety. (Tr. 256). Plaintiff continued to work despite his mental condition. (Tr. 471-472). Plaintiff himself testified his health issues were physical, not mental. (Tr. 492). Despite Plaintiff's anxiety, none of Plaintiff's doctors indicated Plaintiff was severely limited in his ability to perform work related mental activities. (Tr. 273, 257, 291, 221). Even Dr. Yates, who reported severe psychological limitations, found Plaintiff had a good ability to understand, remember, and carry out simple job instructions. (Tr. 312). The Court finds substantial evidence supports the finding that Plaintiff's anxiety did not affect his ability to work. Additionally, despite Plaintiff's claim of disability due to severe depression and mood disorder and diagnoses of the same, Plaintiff reported feeling better mentally and testified he tried to have a sense of humor about things and tried to keep a good frame of mind. (Tr. 479 - 480, 481). Upon review, the Court finds the ALJ performed an evaluation of Plaintiff's mental impairments that is consistent with the Social Security Regulations and substantial evidence supports the ALJ's finding that Plaintiff's mental impairments were not severe.

### 2. The ALJ's evaluation of Plaintiff's pain

Plaintiff argues the ALJ misapplied the Eleventh Circuit pain standard and failed to state a reasonable basis for rejecting Plaintiff's pain testimony. (Doc. 17, p. 10). In particular, Plaintiff argues the fact that he performed a little housework and some cooking, is not dispositive of an ability to perform light work. (Doc. 17, p. 9). Plaintiff contends performance of household work in short duration does not disqualify Plaintiff from the receipt of disability benefits. (Doc. 17, p. 10). The Commissioner argues the

ALJ provided substantial evidence to support Plaintiff's RFC and to show Plaintiff's condition did not cause disabling limitations. (Doc. 18, p. 11). The Commissioner contends the ALJ did not find Plaintiff's daily activities were dispositive evidence of Plaintiff's ability to work, but relied on the evidence as a whole to find Plaintiff's statements not credible. (Doc. 18, p. 13).

In determining whether the medical signs and laboratory findings show medical impairments which could reasonably be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, 67 F.3d at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). Pain alone can be disabling, even when its existence is unsupported by objective evidence, Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A). Therefore, when the ALJ decides not to credit a claimant's testimony about pain, he must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Jones v. Dep't of Health & Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991) (stated reasons must be based on substantial evidence); see also Moore v. Barnhart, 405 F.3d 1208, 1212 n.4 (11th Cir. 2005) (holding precedent in the Eleventh Circuit requires "explicit articulation of the reasons justifying a decision to discredit a claimant's subjective pain testimony"). As a matter of law, the

failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. Foote, 67 F.3d at 1561-62; Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

The Court must determine whether the reasons the ALJ articulated for discrediting Plaintiff's testimony are adequate and supported by substantial evidence. MacGregor, 786 F.2d at 1054. In determining the credibility of a claimant's statements, the ALJ must consider the entire case record and articulate his findings so as to "make clear to the individual and to any subsequent reviewers, the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. 1996 WL 374186, at *1 (July 2, 1996); see Harris v. Astrue, No. 07-22334-CIV, 2008 WL 4725194, at *6 (S.D. Fla. Oct. 24, 2008). The ALJ cannot discredit a claimant's testimony based on the absence of objective evidence alone. See Marbury, 957 F.2d at 839. Additionally, a claimant's participation in household activities such as cooking, grocery shopping, and cleaning is not dispositive evidence of one's ability to work. See Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997) (holding participation in everyday activities for short duration does not disqualify claimant from disability benefits). However, the ALJ may rely on the inconsistencies between a claimant's description of diverse activities and claims of disability to discredit a claimant's subjective complaints. See Johnson v. Barnhart, 268 F. Supp. 2d 1317 (M.D. Fla. 2002), aff'd, 69 Fed. Appx. 991, 2003 WL 21283493 (11th Cir. 2003). The ALJ is allowed to consider the inconsistencies between a claimant's subjective complaints and the evidence of record when determining credibility.

18

See MaCray v. Massanari, 175 F. Supp. 2d 1329, 1338 (M.D.Ala. 2001)(holding the ALJ is entitled to consider inconsistencies between claimant's subjective complaints and evidence of record).

As an initial matter, the Court finds Plaintiff's argument that the ALJ erred by finding Plaintiff's daily activities dispositive of an ability to work is misplaced. Contrary to Plaintiff's argument, the ALJ's decision does not even mention Plaintiff's daily activities in his findings. However, considering the reasons the ALJ did provide for discrediting Plaintiff's testimony, the Court finds they are supported by substantial evidence. In this case, the ALJ found Plaintiff's allegations of pain were unsupported by the objective medical evidence. (Tr. 23-24). The ALJ reasoned Plaintiff's pain was not disabling because there was no significant pain treatment, other than pain medication, reflected in the medical records. Id. Additionally, the ALJ determined the fact that Plaintiff was working suggested his symptoms were not as debilitating as he claimed. Id. The ALJ also indicated he gave Plaintiff's allegation of being unable to stand or walk for long periods little weight because no doctor had noted this limitation. (Tr. 24). While the lack of objective medical evidence alone, is not determinative of Plaintiff's credibility, the ALJ is allowed to consider the objective medical signs and findings, or lack thereof, when determining credibility. See 20 C.F.R. § 416.929(c). Here, the ALJ considered the absence of medical evidence together with the fact that Plaintiff had demonstrated an ongoing ability to work and found Plaintiff's claims of disabling pain inconsistent with the record. Accordingly, the Court concludes the ALJ provided an adequate evaluation of Plaintiff's pain testimony which is supported by substantial evidence.

### 3.    Hypothetical questions posed to the VE

Plaintiff argues the ALJ's decision was not based on substantial evidence because the ALJ's hypothetical to the VE failed to include any of the mental impairments mentioned by Dr. Yates.  (Doc. 17, pp. 10-11).  Plaintiff contends the ALJ failed to consider the combination of Plaintiff's impairments, even if the impairments separately were not found to be "severe".  (Doc. 17, p. 11).  In support of this argument, Plaintiff cites to Hudson v. Heckler, 755 F.2d 781 (11th Cir. 1985) and Cook v. Barnhart, 347 F. Supp. 2d 1125, 1133, 1134 (M.D. Ala. 2004), specifically arguing that although Plaintiff's mental impairments were deemed "non-severe," the ALJ should have included the same in the hypothetical posed to the VE.  Id.  Further, Plaintiff argues if the ALJ had considered the VE's responses to the hypothetical questions of Plaintiff's representative, the ALJ would have found the occupational base for the jobs identified was so eroded that such jobs would be unavailable to Plaintiff.  Id.  The Commissioner argues Plaintiff's contention is without merit because the ALJ was not required to include unsupported allegations in the hypothetical question and was not required to include limitations he found not credible.  (Doc. 18, p. 14-15).

Generally, in order for the VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical that incorporates all of the claimant's impairments.  Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999)).  There is a requirement that the ALJ consider the combination of impairments even when the impairments separately are not severe.  See Bruet v. Barnhart, 313 F. Supp. 2d 1338, 1346 (M.D. Fla. 2004) (citing Hudson v. Heckler, 755 F.2d 781 (11th Cir. 1985); see also Walker v. Bowen, 826 F.2d 996, 1001 (11th Cir. 1987) (finding the ALJ is required to consider the combined effects of all impairments in

evaluating disability).  However, the ALJ need not include in the hypothetical posed to the VE, impairments which do not severely limit the claimant's ability to work.  See Jones v. Comm'r of Soc. Sec., 181 Fed. Appx. 767, 771 (11th Cir. 2006) (holding the hypothetical posed to the VE need not include limitation as to concentration because the claimant's daily activities and a doctor's report "do not necessitate a finding that [the claimant] has severe impairments in her concentration"); see also Loveless v. Massanari, 136 F. Supp. 2d 1245, 1251 (M.D. Ala. 2001) (holding ALJ's hypothetical questions were proper where they included only impairments the ALJ found to be severe).

In this case, the ALJ did not include Plaintiff's mental impairments in the hypothetical posed to the VE.  (Tr. 501-502).  However, the Court finds the ALJ considered the combination of Plaintiff's impairments, but because his mental impairments were found to be "not severe," the ALJ did not include them in the hypothetical.  Contrary to Plaintiff's argument, Cook held the ALJ's hypothetical was flawed because it failed "to outline explicitly all [of the claimant's] *severe* impairments." Cook, 347 F. Supp. 2d 1125 at 1134 (emphasis added).  The Cook court did not find the ALJ erred because he failed to incorporate the claimant's non-severe impairments.  Id. Therefore, in this case, where the Court has determined the ALJ properly considered Plaintiff's mental impairments and substantial evidence supports the same, the Court finds the ALJ presented the VE with a proper hypothetical.  In presenting the hypothetical, the ALJ laid out Plaintiff's RFC based on the physical limitations identified. (Tr. 19, 501-502).  Accordingly, the Court concludes the ALJ's omission of any reference to Plaintiff's mental condition in the hypothetical is not reversible error.

**4.** **Weight placed on opinions of Plaintiff's treating and examining**

**physicians**

In this case, Plaintiff argues "good cause" did not justify the weight the ALJ placed on the opinion of Plaintiff's treating physicians. (Doc. 17, p. 11). Plaintiff argues considerable weight should have been placed on the opinions of Dr. Biggerstaff and Dr. Sessions because their treatment relationship with Plaintiff met the longitudinal requirements of the case law in this circuit. Id. Without citing specific opinions, Plaintiff also contends the ALJ selectively ignored certain opinions which would have led to a favorable outcome for Plaintiff. Id. The Commissioner argues Plaintiff's failure to specify which opinions the ALJ improperly weighed, amounts to Plaintiff's abandonment of this issue. (Doc. 18, p. 16). Alternatively, the Commissioner argues substantial evidence supports the ALJ's evaluation of Plaintiff's treating physicians' opinions. (Doc. 18, pp. 17-18).

The ALJ is required to give controlling weight to the opinion of a treating physician because a treating physician is one who is able to provide a detailed longitudinal picture of the claimant's impairment(s). 20 C.F.R. § 404.1527(d)(2). A treating physician's opinion must be given "substantial or considerable weight unless 'good cause' is shown to the contrary." Wright v. Barnhart, 153 Fed. Appx. 678, 684 (11th Cir. 2005) (citing Lewis, 125 F.3d 1436 at 1439. The Eleventh Circuit has found there is "good cause" to place less weight on the opinion of a treating physician where: (1) the opinion was not bolstered by the evidence, (2) the evidence supported a contrary finding, or (3) the opinion was conclusory or inconsistent with the doctor's own medical records. Id. Where an ALJ discounts or rejects a treating physician's opinion, he is required to articulate his reasons for doing so. Phillips v. Barnhart, 357 F.3d. 1232, 1241 (11th Cir.

2004). An ALJ commits reversible error if he fails to articulate reasons for discounting a treating physician's opinion. See Lewis, 125 F.3d at 1440.

In this case, it appears the ALJ determined Dr. Sessions and Dr. Biggerstaff were Plaintiff's treating physicians. (Tr. 20, 23). However, the ALJ also discussed the opinions of two consultative psychological examiners employed by the Social Security Administration and the opinion of Dr. Yates, who performed a single psychological evaluation of Plaintiff. (Tr. 20, 21). The ALJ found, except for Dr. Sessions's assessment of Plaintiff's ability to deal with stress and authority, Dr. Sessions's opinion was consistent with the objective medical evidence and was entitled to great weight. (Tr. 21). It appears the ALJ also placed considerable weight on Dr. Biggerstaff's treatment records[3] although the ALJ did not expressly discuss the weight he applied. Id. With respect to the consultative sources, the ALJ determined Dr. Yates's opinion was worth little weight because his opinion was unsupported by objective medical evidence and Dr. Yates's opinion was contrary to the opinion of Plaintiff's treating physician, Dr. Sessions. Id. However, the ALJ gave the opinions of the state agency psychologists significant weight because he found them fully supported by the objective medical evidence. Id.

While Plaintiff argues no good cause existed to place limited weight on the treating physicians' opinions, the ALJ recognized Dr. Sessions and Dr. Biggerstaff as Plaintiff's treating doctors, but did not in fact discount their opinions. As such, the Court finds Plaintiff's argument concerning good cause is without merit. Ordinarily, the ALJ must specify what weight is given to a treating physician's opinion and any reason for

---

[3]The Court refers to the treatment records of Dr. Biggerstaff, as opposed to Dr. Biggerstaff's opinion, because there is no evaluation form from Dr. Biggerstaff in the record.

giving it no weight.  See MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

However, remand is only required in cases where the court is "unable to determine

whether the ALJ applied the proper legal standard and gave the treating physician's

evidence substantial or considerable weight or found good cause not to do so."  Wiggins

v. Schwaiker, 679 F.2d 1387, 1390 (11th Cir. 1982).  The ALJ placed great weight on Dr.

Sessions's opinion, with the exception of the portion which dealt with Plaintiff's ability to

deal with stress and authority, and the Court finds the ALJ clearly articulated his reason

for discrediting that portion of Dr. Sessions's opinion.  The ALJ found Dr. Sessions's

opinion that Plaintiff was unable to deal with work stress and authority inconsistent with

the fact that, despite his condition, Plaintiff was working in a position that required

interaction with the public.  (Tr. 20).

　　　With respect to Dr. Biggerstaff, the Court recognizes the ALJ did not specifically

express the weight given to his progress notes.  However, it appears the ALJ placed

considerable weight on Dr. Biggerstaff's records.  The Court finds the weight applied is

implicit in the ALJ's discussion.  First, the ALJ noted the length of Dr. Biggerstaff's

treating relationship with Plaintiff.  The ALJ also relied of Dr. Biggerstaff's notes which

reflected Plaintiff's reports of feeling better mentally and physically.  Third, the ALJ used

Dr. Biggerstaff's records to support his finding that Plaintiff only received conservative

treatment for pain.  There is nothing to indicate the ALJ placed limited weight on Dr.

Biggerstaff's notes.  Accordingly, the Court finds the ALJ applied the proper legal

standard and placed the appropriate weight on the treating physician's records.  Despite

the ALJ's omission of an explicit expression of the weight applied, the Court finds

remand is not required.

With regard to Plaintiff's consultative psychological evaluations, the ALJ noted the state agency psychologists' opinions were consistent with the record, but that of Dr. Yates was not. (Tr. 21). "[T]he report of a consulting physician who examined claimant once does not constitute 'substantial evidence' upon the record as a whole, especially when contradicted by the evaluation of the claimant's treating physician." Kent v. Sullivan, 788 F. Supp. 541, 544 (N.D. Ala. 1992). In this case, Plaintiff saw Dr. Yates once, on May 12, 2005. (Tr. 303). Dr. Yates opined Plaintiff's mental ability to work was "poor to none" in areas such as relating to co-workers, dealing with the public, using judgment, dealing with work stresses, maintaining concentration, understanding, relating predictably in social situations, and demonstrating reliability. (Tr. 310-313). The ALJ found Dr. Yates's report inconsistent with that of Dr. Sessions, who found Plaintiff's quality of thinking, thought content, concentration, orientation, memory, and behavior "normal." (Tr. 256 -257). Dr. Sessions treated Plaintiff multiple times from August 27, 2002 through September 30, 2004 and found Plaintiff was mentally capable of functioning. (Tr. 2, 257). As such, Dr. Yates's opinion is at odds with that of treating physician, Dr. Sessions, and cannot constitute substantial evidence of disability. The ALJ also found the fact that Plaintiff was working despite his mental condition, and the fact that he testified to having no problems with concentration or criticism, inconsistent with Dr. Yates's opinion of Plaintiff's mental ability to work. (Tr. 484). The Court finds the ALJ explained his decision to discredit Dr. Yates's opinion. Additionally, the state agency psychologists' opinions were consistent with those of Plaintiff's treating physicians. Accordingly, the Court finds substantial evidence supports the ALJ's evaluation of Plaintiff's physicians' opinions.

## IV.    CONCLUSION

For the foregoing reasons, the decision of the Commissioner is **AFFIRMED**
pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk is directed to enter judgment
consistent with this opinion and thereafter, to close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this __24th__ day of August, 2009.


_Monte C. Richardson_

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record